UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BOILING CRAB FRANCHISE CO LLC,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>KL BOILING CRAWFISH CORPORATION, NGUYEN BOILING CRAWFISH CORPORATION,<br><br>　　　　　　　Defendants. | CASE NO. 2:21-cv-00293-JHC<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PROTECTIVE ORDER** |

　　　　Plaintiff Boiling Crab Franchise Co., LLC requests a protective order striking or limiting the scope of a Rule 30(b)(6) Deposition Notice served by Defendants KL Boiling Crawfish Corporation and Nguyen Boiling Crawfish Corporation. Dkt. 24. Defendants oppose the motion (Dkt. 27) and Plaintiff has filed a reply (Dkt. 30). On May 10, 2022, this motion was referred to the undersigned Magistrate Judge pursuant to Rule 72(a) and 28 U.S.C. § 686(b)(1)(A).

　　　　Having carefully reviewed the parties' briefings, declarations, and balance of the record, the Court grants the motion as detailed herein.

<u>BACKGROUND</u>

　　　　The following procedural and factual background is set forth in Plaintiff's motion (Dkt. 24) and is not challenged by Defendants (Dkt. 27, p. 3).

　　　　Plaintiff filed this lawsuit on March 5, 2021, for infringement of its federally registered THE BOILING CRAB trademarks for restaurant services based on Defendants' use of the marks

BOILING CRAWFISH and BOILING CRAWFISH SEAFOOD RESTAURANT with the essentially identical restaurant services. Dkt. 1.

Defendants first served written discovery requests on November 5, 2021, which included 17 interrogatories and 7 requests for production. Dkt. 26, Declaration of Steven E. Klein ("Klein Decl.") ¶ 3 & Ex. 1. Only one request pertained to Plaintiff's prior litigation – in Interrogatory No. 4, Defendants asked Plaintiff to identify each case by number, date filed, venue, and disposition of each case identified. *Id*. ¶ 5 & Ex. 1. Plaintiff answered that it would produce copies of nonprivileged documents sufficient to determine the information for cases filed in the United States. *Id*. ¶ 5. On January 4, 2022, Plaintiff produced for each case a copy of the file-stamped complaint, any stipulation, final order, or judgment disposing of the matter and any preliminary or final opinions on the merits. *Id*.

On December 17, 2021, Defendants served a Notice of Plaintiff's deposition pursuant to Fed. R. Civ. P. 30(b)(6) (the "Notice."). Dkt. 26, Klein Decl., ¶ 6 & Ex. 3. "Topic No. 5" of the Notice sought designation of a witness to testify on "[p]revious and concurrent lawsuits against similarly situated Defendants, nationwide, and any unprivileged or non-confidential settlement agreements and/or judgments obtained in those previous lawsuits." *Id*.

On December 29, 2021, Plaintiff served its objections to the Notice. Dkt. 26, ¶ 7 & Ex. 4. Plaintiff specifically objected to Topic No. 5 on several grounds, including that it is overly broad, unduly burdensome, disproportionate to the needs of the case, lacks reasonably particularity, seeks legal conclusion and arguments, and seeks information more appropriately the subject of less burdensome forms of discovery. Subject to these objections, Plaintiff offered to make a designated representative available to testify regarding "general, nonconfidential and nonprivileged information concerning the general factual basis for any previous lawsuits brought

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR PROTECTIVE ORDER - 2

1   in the United States by The Boiling Crab, alleging infringement of the marks asserted by The

2   Boiling Crab in the Complaint, based on use by the defendant(s) of marks incorporating the

3   phrase 'Boiling Crawfish,' and any unprivileged or non-confidential final executed settlement

4   agreements and/or judgments obtained in those previous lawsuits." *Id*.

5        On February 1, 2021, counsel for the parties met and conferred. Dkt. 26, Klein Decl., ¶ 9.

6   As to Topic No. 5, Defendants' counsel indicated there might be a case that Defendants wanted

7   to inquire about that did not involve a "Boiling Crawfish" mark. *Id*. ¶ 10. Defendants agreed to

8   compile a list of such cases for further discussion. *Id*. On February 2, 2022, Defendants served an

9   Amended Notice with no changes to Topic No. 5. *Id*. On the same day, Defendants' counsel

10  emailed a list of cases (from PACER) of 14 federal actions for trademark infringement filed by

11  Plaintiff since its formation in 2013. *Id*. ¶ 12 & Ex. 6. (The one omitted case was a 2007 action

12  brought in the name of Plaintiff's predecessor in interest. *Id*. ¶ 12.) Defendants' counsel stated,

13  "I'm primarily concerned with settlement terms, judgments, and whether the defendants were

14  represented by counsel and actually litigated the case and presented a defense. I'm not intending

15  to get into the fine minutiae of each individual case." *Id*.

16       On February 3, 2022, Plaintiff's counsel responded that the more specific areas identified

17  by Defendants' counsel were either matters of public record or would require a witness to draw

18  legal conclusions. Plaintiff's counsel suggested that if Defendants were to draft a neutrally

19  worded description of the cases, parties and dispositions, Plaintiff would be open to entering an

20  appropriate stipulation on the same. *Id*. ¶ 13 & Ex. 7. Counsel also noted that in most of the

21  listed cases where a settlement had been reached, the terms were subject to express

22  confidentiality provisions. *Id*. On February 10, 2022, Defendants' counsel stated, "I have a

23  proposal with regard to how to deal with topic number 5," but did not outline what it was. *Id*. ¶¶

15-16 & Exs. 9, 10. On February 15, 2022, counsel again conferred but at that time, Defendants stated their position that none of Plaintiff's settlement agreements with third parties should be considered confidential and Plaintiff would have to seek a protective order from the Court. Dkt. 26, Klein Decl., ¶ 17. Defendants' counsel also provided a broader list of topics related to Plaintiff's prior trademark litigations:

1. Whether the defendant had insurance and who their carrier was including policy limits and whether defendant's defense was provided with no reservation or under a Reservation of Rights.

2. Whether they were represented by counsel and who that counsel was.

3. Did these other businesses have their names and trademarks licensed in the state they were doing business.

4. Whether defense counsel in each case was hired from an insurance company.

5. Whether any of the damages alleged or paid in settlements was paid by an insurer versus the individual defendants and were the terms of settlement equitable or legal (money damages) in nature.

6. The terms of the settlement agreements.

7. Whether any of the business [sic] were allowed to continue operating pursuant to the settlement agreements, and in what capacity. Was it name change, media, advertising.

8. Has TBC ever actually engaged in corrective advertising following one of these lawsuits, as alleged is required.

9. Whether any of these businesses closed completely based upon the terms of a settlement agreement.

10. The amount paid in settlement and specific details of non-monetary terms.

11. How the settlement amount was calculated.

12. Whether any of those businesses simply changed their name to continue operating and what did they change their names to.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR PROTECTIVE ORDER - 4

      13.      How TBC became aware of the individual defendants' restaurants nationwide, and how did they become aware of Boiling Crawfish (Defendants in this case).

      14.      Has TBC ever prevailed on the merits of any of the cases, and what was the method? (Summary judgment, default judgment, trial on the merits, etc.).

*Id.*, ¶ 18 & Ex. 11. This motion for protective order ensued.

Plaintiff's counsel estimates that it will take approximately 60-80 hours to gather the necessary information and prepare a witness to testify as to the 14 (15 with 2007 action) separate actions (with 14 separate areas of inquiry) dating back to 2013 or earlier. Dkt. 26, Klein Decl., ¶ 19.

According to Dada Ngo, Plaintiff's CEO, the settlement terms in 12 of the cases are the subject of express written agreements requiring Plaintiff to maintain the terms as strictly confidential. Dkt. 25, Declaration of Dada Ngo ("Ngo Decl.") ¶¶ 5-7. As explained by Ms. Ngo, Plaintiff has been involved in 15 federal infringement actions (other than this case) since 2004. In most of these cases, the parties reached a negotiated settlement and in almost all the cases where a settlement was reached, the parties memorialized their agreement in a writing that included an express, negotiated provision acknowledging that the terms of the settlement were confidential to the parties. Each settlement negotiation involved its own unique facts and potentially sensitive information, including in multiple cases, financial information. Ms. Ngo states that disclosing the confidential terms and details of the settlements would reveal Plaintiff's broader non-public business or financial strategies regarding how it approaches and resolves such cases and would also implicate the privacy interests of the third parties to the agreements, which could be damaging to their reputation and privacy. *Id.*, ¶¶ 6-10. Additionally, because parties to the confidential settlement agreement proceeded with the understanding that the terms

1   of the settlement agreement would remain confidential, disclosure by Plaintiff of these terms

2   could expose Plaintiff to breach of contract claims and could chill third parties' willingness to

3   enter into future settlement negotiations and agreements with Plaintiff. *Id.*

4         Defendants dispute the estimate of 60 to 80 hours because Plaintiff was represented by

5   the same attorney in every case but one. As to disclosing confidential settlement agreements,

6   Defendants argue that Plaintiff has failed to demonstrate how it will be harmed.

7   <u>DISCUSSION</u>

8         A party may serve notice on an organization that describes "with reasonable particularity

9   the matters on which examination is requested." The noticed organization must then "designate

10  one or more officers, directors, or managing agents, or other persons who consent to testify on its

11  behalf." Fed. R. Civ. P. 30(b)(6). "The persons so designated shall testify as to the matters

12  known or reasonably available to the organization." *Id.* "Once the witness satisfies the minimum

13  standard [for serving as a designated witness], the scope of the deposition is determined solely by

14  relevance under Rule 26. *Detoy v. City and County of San Francisco*, 196 F.R.D. 362, 367 (N.D.

15  Cal. 2000); *see also U.S. E.E.O.C. v. Caesars Entertainment, Inc.*, 237 F.R.D. 428, 432 (D. Nev.

16  2006).

17        Unless otherwise limited by court order, parties may obtain discovery regarding any

18  nonprivileged matter that is relevant to any party's claim or defense and proportional to the

19  needs of the case, considering the importance of the issues at stake, the amount in controversy,

20  the parties' relative access to relevant information, the parties' resources, the importance of the

21  discovery in resolving the issues, and whether the burden or expense of the proposed discovery

22  outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).

23        A party or any person from whom discovery is sought may move for a protective order

and the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including forbidding inquiry into certain matters, limiting the scope of disclosure or discovery to certain matters, and requiring that confidential information not be revealed or be revealed only in a specified manner. Fed. R. Civ. P. 26(c)(1). To establish good cause for issuance of a protective order, the party seeking protection bears the burden of showing that specific prejudice or harm will result if no protective order is granted. *See Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir.1992) (holding that broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test); *see also San Jose Mercury News, Inc. v. United States Dist. Court*, 187 F.3d 1096, 1103 (9th Cir.1999) (holding that to gain a protective order the party must make a particularized showing of good cause with respect to any individual document). If a court finds particularized harm will result from disclosure of information to the public, it then balances the public and private interests to decide whether a protective order is necessary. *See Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3rd Cir.1995).

A.    Defendants' 30(b)(6) Notice

Only Topic No. 5 of Defendants' Rule 30(b)(6) Notice is at issue here, *i.e.*, the designation of a witness on "[p]revious and concurrent lawsuits against similarly situated Defendants, nationwide, and any unprivileged or non-confidential settlement agreements and/or judgments obtained in those previous lawsuits." Defendants do not dispute that Topic No. 5 as originally drafted lacked reasonable particularity but contend they have corrected this deficiency by providing 14 subtopics of inquiry as to each of the 14 federal actions for trademark infringement filed by Plaintiff since its formation in 2013. Defendants contend that information regarding all prior infringement actions brought by Plaintiff is relevant because this action is part

of Plaintiff's "nationwide campaign to shut down any potential 'competitors' who serve similar cuisine," including all "mom and pop" restaurants. Dkt. 27, pp. 1-2. Defendants also argue that they are similarly situated to the defendants in two of the prior infringement actions because Plaintiff intends to rely on instances of confusion involving a restaurant in Jacksonville, Florida, which were the subject of those prior actions.

When considering a protective order, the initial inquiry is whether the requested material is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). In this case, Plaintiff alleges Defendants infringe on their mark in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1). "The likelihood of confusion is the central element of trademark infringement, and the issue can be recast as the determination of whether 'the similarity of the marks is likely to confuse customers about the source of the products.'" *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000) (internal quotations omitted). To determine whether a likelihood of confusion exists, this Court applies the eight factor *Sleekcraft* test: (1) the "similarity of the marks"; (2) the "strength of the mark" that has allegedly been infringed; (3) "evidence of actual confusion"; (4) the relatedness or "proximity" of the goods; (5) the "normal marketing channels" used by both parties; (6) the "type of goods and the degree of care likely to be exercised by the purchaser"; (7) the alleged infringer's "intent in selecting the mark"; and (8) evidence that "either party may expand his business to compete with the other." *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–54 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003)). "The ultimate question of likelihood of confusion is predominantly factual in nature, as is each factor within the *Sleekcraft* likelihood of confusion test." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002).

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR PROTECTIVE ORDER - 8

Plaintiff claims Defendants willful and deliberate infringement "caused, and will continue to cause, actual confusion, mistake, and deception to purchasers as to the source and origin of Defendants' goods and services sold under the Infringing Marks." Dkt. 34 at 8. Plaintiff also claims, "Defendants' activities are intended, and are likely, to lead the public to conclude, incorrectly, that Defendants' Infringing Goods and Services originate with, are sponsored by, and/or are authorized by The Boiling Crab and its registered marks, to the damage and harm of The Boiling Crab and the consuming public." Dkt. 34 at 8. Defendants counter that there is no likelihood that consumers will be confused between its marks and Plaintiff's marks and that they were not aware of Plaintiff's marks. Dkt. 36 at 4.

1. <u>Relevance of Prior Litigation</u>

While the likelihood of confusion is a fact-specific inquiry, Plaintiff previously brought and settled actions against other alleged trademark infringers and alleged that those defendants used marks similar enough to confuse customers. Plaintiff has offered to designate and prepare a witness on the "the non-privileged, general factual basis for previous actions involving use of 'Boiling Crawfish' marks—and the nonconfidential disposition and/or final settlement terms regarding the same." Plaintiff has also offered to include confidential final settlement terms within this scope subject to an "Attorney's Eyes Only" designation.

Because Plaintiff alleged the defendants in prior litigation used marks similar enough to the "Boiling Crawfish" marks to confuse customers and is alleging the same here, the Court agrees that litigation involving the use of the "Boiling Crawfish" mark (the "Boiling Crawfish Cases") are relevant to the parties' claims in this litigation. (Included in this category of cases are the two cases involving instances of confusion at a Jacksonville, Florida restaurant referred to by Defendants above, which involved the essentially identical "Boiling Crawfish" mark: the Vu

action (N.D. Cal. 2007) ("The Boiling Crawfish") and the CC Food Enterprise action (S.D. Ind. 2020) ("The Boiling Crawfish Crab Lobster & Bar")). *See* Dkt. 31, Reply Declaration of Steven Klein ("Klein Reply Decl.") ¶¶ 7-8, Exs. 5 & 6.

Conversely, Defendants have failed to show how any inquiry into prior cases against defendants not using the Boiling Crawfish mark are relevant to the parties' claims or defenses in this litigation. Particularly, as the ultimate question of likelihood of confusion is predominantly factual in nature, as is each of the factors within the *Sleekcraft* test. *Entrepreneur Media*, 279 F.3d 1135 at 1140. *See also*, *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp.*, 140 S. Ct. 1589, 1596 (S.Ct. 2000)) (even as between the same parties, prior trademark litigation is not relevant to the determination of likelihood of confusion where the claims "were grounded on different conduct, involving different marks, occurring at different times").

Based on the foregoing, the Court **grants** Plaintiff's motion for protective order as to prior lawsuits that do *not* involve the use of the Boiling Crawfish mark at issue in this litigation. As to the Boiling Crawfish Cases, the Court now determines whether the 14 topics of inquiry proposed by Defendants are relevant. Where they are relevant, the Court concludes that the confidential provisions of settlement agreements and confidential details disclosed within these topics shall be designated as "Attorney's Eyes Only" (discussed in more detail below).

    2.    <u>14 Topics of Inquiry</u>

        a.    <u>Topics 1, 2, 4, and 5</u> seek to inquire as to the insurance status of previous defendants, whether they were represented by counsel, whether counsel was paid by an insurance company, and whether an insurance company paid any damages or settlement. Defendants have not shown how these areas of inquiry are relevant to any party's claims or defenses in this case. Additionally, Plaintiff has produced file-stamped copies of complaints, stipulations and/or final

orders and opinions in response to Interrogatory No. 4. *See* Dkt. 26, Klein Decl., Ex. 1. Therefore, the information sought by Defendants is otherwise available to them. The Court **grants** Plaintiff's motion for protective order covering Topics 1, 2, 4, and 5.

        b.    <u>Topic 3</u> seeks to inquire whether other businesses involved in other infringement actions had their names and trademarks licensed in the state they were doing business. Defendants argue this topic is relevant because they registered their trademark with the State of Washington and performed due diligence before opening their business. Dkt. 27 at 7. Defendants fail to explain how state trademark registration is relevant here as this action involves federal trademark claims under the Lanham Act, 15 U.S.C. § 1114(1). Additionally, as state trademark registrations are public, this information is equally available to Defendants. The Court **grants** Plaintiff's motion for protective order as to Topic 3.

        c.    <u>Topics 6 through 12</u>. In Topic 6, Defendants seek to inquire about "the terms of the settlement agreements." Following this very broadly stated topic, Defendants list Topics 7 through 12, describing further areas of inquiry based on the terms of the settlement agreements, such as the status of operations of prior defendants and name changes, corrective advertising undertaken by Plaintiff, the closure of businesses, and the amounts and calculation of settlement amounts.

The Court is aware that Plaintiff is no longer seeking monetary damages in any form in this action (*see* Dkt. 31, Klein Reply Decl. 4 & Ex. 1) and therefore, the relevance of corrective advertising and/or monetary damages in any prior litigation is questionable. However, to the extent these terms are contained in the settlement agreements in the Boiling Crawfish Cases, these areas of inquiry may be relevant to the extent of confusion caused by use of Plaintiff's marks. The Court **grants** Plaintiff's motion for protective order as to Topics 6 through 12 in part.

These topics of inquiry shall be limited to settlement agreements in the Boiling Crawfish Cases and any confidential settlement terms or deposition testimony relating to confidential settlement terms shall be designated as "Attorney's Eyes Only."

    d. <u>Topic 13</u> seeks to inquire as to how Plaintiff became aware of "individual defendants' restaurants nationwide" and how Plaintiff became aware of the Defendants' restaurant. Plaintiff's awareness of Defendants' restaurant was addressed in an Interrogatory response, Dkt. 26 Ex. 2, and as a separate (agreed) topic in the 30(b)(6) deposition of Plaintiff taken by Defendants on February 16, 2022. Therefore, the motion for protective order as to Plaintiff's awareness of Defendants' restaurant is moot. The Court **grants** Plaintiff's motion for protective order in part as to the remainder of Topic 13 by limiting Defendants' inquiry to the restaurants in the Boiling Crawfish Cases.

    e. <u>Topic 14</u> seeks to inquire whether Plaintiff prevailed on the merits of any of the cases and the method (*i.e.*, summary judgment, default judgment, trial). Plaintiff already produced to Defendants, copies of the complaints and any stipulation, final orders, judgments, and/or opinions. *See* Dkt. 26, Klein Decl., Ex. 1. In addition, Defendants have access through PACER to every pleading, brief, opinion, and disposition in the prior actions. Because Defendants already have this information or the information is readily available, the Court **grants** Plaintiff's motion for protective order on Topic 14.

B. <u>Protective Order – Confidentiality of Settlement Agreements</u>

  Plaintiff argues it has good cause for a protective order because the settlement agreements are subject to confidentiality provisions, the parties to those agreements are not parties to the matter at issue, and those parties will expect that the terms of the agreements will remain confidential. Dkt. 24 at 11; Dkt. 30 at 7. Plaintiff also contends that "[p]ermitting the

public disclosure of these negotiations and agreements is contrary to the public policy favoring settlement agreements and could 'chill third parties' willingness to enter into future settlement negotiations and agreements with [Plaintiff]" and "each negotiation involved its own unique facts and potentially sensitive information, often including financial information." Dkt. 24 at 11. Plaintiff also argues generally that "disclosure to a direct competitor, such as Defendants' principal, would cause even more substantial harm". Dkt. 24 at 11.

In addressing whether to apply protective orders to settlement agreements, some courts have cited a strong public policy favoring settlement of claims as good cause for issuing a protective order for confidential settlement agreements. *See*, *e.g.*, *Hasbrouck v. BankAmerica Housing Svcs.*, 187 F.R.D. 453, 459 (N.D.N.Y. 1999) ("While protecting the confidentiality of settlement agreements encourages settlement, which is in the public interest, permitting disclosure would discourage settlements, contrary to public interest."); *Prosurance Grp., Inc. v. Liberty Mut. Grp., Inc.*, 10-CV-2600 (LHK), 2011 WL 704456 (N.D. Cal. Feb. 18, 2011) (finding that to the extent "the documents discuss or disclose the terms of the [settlement] Agreement, good cause exists to permit filing under seal) (citing *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1212 (9th Cir.2002) (noting that courts have granted protective orders to protect confidential settlement agreements)); *Daniels v. Bursey*, No. 03 C 1550, 2006 WL 468015, at *4 (N.D. Ill. Feb. 23, 2006) (strong public policy favoring settlement of claims was "good cause" to issue protective order for a confidential settlement agreement). On the other hand, courts have also recognized the "countervailing public interest" in "affording a litigant the opportunity to broadly discover information in support of its case. *Hasbrouck*, 187 F.R.D. at 458.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR PROTECTIVE ORDER - 13

1        Although this Court recognizes that the confidential nature of a settlement agreement does not automatically entitle Plaintiff to a protective order, it finds significant the fact that those settlement agreements involve nonparties who proceeded with the understanding that the terms of the settlement agreement would remain confidential. The Court must be cognizant of the privacy interests of those nonparties. Plaintiff's interest in maintaining the confidentiality of these settlement agreements, along with a strong public interest in promoting settlements, weighs in favor of a protective order. Defendants do not present a strong interest that would favor full disclosure of confidential settlement agreements – particularly as Plaintiff does not seek to prevent Defendants from accessing the settlement agreements entirely but seeks only to limit the use of the confidential information by Defendants and their counsel to this litigation.

       After consideration of the equities, the Court finds that Plaintiff's interest in protecting confidential settlement agreements by limiting their disclosure to use in this litigation and the strong public interest favoring settlement weigh more strongly than the Defendants' interest in publicly disclosing the contents of the settlement agreements outside of this litigation. Accordingly, the Court **grants** Plaintiff's motion for protective order as to any confidential settlement agreements and confidential details relating to the settlement agreements elicited during the Rule 30(b)(6) deposition of Plaintiff's representative. The settlement agreements and testimony relating to confidential details of the settlement agreements shall be designated as "Attorney's Eyes Only" and shall be disclosed and used in this litigation only.

       DATED this 12th day of May, 2022.

                                               BRIAN A. TSUCHIDA
                                               United States Magistrate Judge