UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BOILING CRAB FRANCHISE CO LLC, *a California limited liability company*,<br><br>Plaintiff,<br><br>v.<br><br>KL BOILING CRAWFISH CORPORATION *a Washington corporation*; and NGUYEN BOILING CRAWFISH CORPORATION *a Washington corporation*,<br><br>Defendant. | CASE NO. 2:21-cv-00293-JHC<br><br>ORDER RE: MOTION FOR SUMMARY JUDGMENT |

**I.**

**INTRODUCTION**

This matter comes before the Court Defendants' Motion for Summary Judgment. Dkt. # 37. The Court has considered the materials filed in support of and in opposition to the Motion. Being fully advised, for the reasons discussed below, the Court DENIES the motion.

**II.**

**BACKGROUND**

Plaintiff, Boiling Crab Franchise Co., LLC, is a California limited liability company. Dkt. # 43 at 1. Plaintiff's predecessor in interest, Sinhdarella, Inc., opened the first The Boiling

Crab restaurant in 2004. Dkt. # 41 at 6, 9. In 2013, Sinhdarella Inc.—owned and operated by Plaintiff's CEO, Dada Ngo, and her husband—assigned its right, title, and interest in The Boiling Crab's intellectual property to Plaintiff. Dkt. # 43-1. Relevant here are four of Plaintiff's trademarks registered with the United States Patent and Trademark Office (PTO):

| Mark | U.S. Registration No. |
|---|---|
| THE BOILING CRAB | 3256219 |
| The Boiling Crab (logo with black crab) | 4174077 |
| THE BOILING CRAB (red and blue text) | 4491054 |
| The Boiling Crab (logo with red crab) | 5374534 |

Dkt. # 43 at 5–6. Two marks include the text, "THE BOILING CRAB"—one in black and the other with the words "THE BOILING" in red and "CRAB" in blue. The other two marks include the text, "The Boiling" above and "Crab" below an image of a crab—one mark is black and the other has black text with a red crab.

The Boiling Crab restaurants serve "Cajun-influenced" seafood entrees with "proprietary finishing sauces from mild to a highly spicey [sic]." Dkt. # 43 at 2. They serve seafood by the pound with different spice levels. There are currently 22 The Boiling Crab branded restaurants—none are in Washington. *Id.* at 4.

Tuyen Bach Nguyen and Hein Van Nguyen own Defendants KL Boiling Crawfish Corporation and Nguyen Boiling Crawfish Corporation, both incorporated in Washington.  Dkt. # 42-51 at 6–8, 11–12.  Defendants own and operate two Boiling Crawfish Seafood Restaurants in Washington—one in Kent that opened in 2016 and one in Puyallup that opened in 2018.  Dkt. # 42-51 at 10.  Defendants serve seafood by the pound with varying levels of seasoning and spice.  Dkt. # 37 at 3.

Defendants registered their mark with the Secretary of State of Washington.  Dkt. # 38 at 81–90.  Here is a copy of their mark:



*Id.* at 55.  In some signage, Defendants use orange, white, or black text, saying "BOILING CRAWFISH SEAFOOD RESTAURANT," with an image of a smiling, red crawfish with a chef's hat in the middle of the letter "O" in "BOILING."  *Id.* at 85–87.

On September 27, 2016, Plaintiff sent Defendants a letter claiming Defendants' "activity is. . . trademark infringement."  Dkt. # 42-51 at 91.  Plaintiff said Defendants' menu used the same format and sections as Plaintiff's, including sections for customer's choice of catch, flavor, and spice level.  *Id.* at 91–92.  The letter included the following menu images:

 

ORDER RE: MOTION
FOR SUMMARY JUDGMENT - 3

*Id.* at 92.  Plaintiff demanded that Defendants immediately stop using the name "Boiling Crawfish" and change their menu:

- Stop all use of the name "Boiling Crawfish" and remove references to "Boiling Crawfish," including but not limited to your website, menu, marketing collateral, social media pages and all third party sites in which the name appears.  Refrain in the future from using any name or mark that includes, comprises of or is similar to THE BOILING CRAB, including "Boing Crawfish."

- Change your menu section titles so they are not similar to The Boiling Crab's menu and refrain from using similar format and wording in the future.

*Id.*  In response, Defendants changed some aspects of their menu.  Dkt. ## 42-12 at 3–4 (Resp. to Req. Produc.); 42-51 at 46–48 (Tuyen Bach Nguyen Dep.).

On March 5, 2021, Plaintiff sued Defendants for trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for its use of the Boiling Crawfish mark, with and without the crawfish design.  Dkt. ## 1 (Compl.); 34 at 1, 6–7 (Am. Compl).  Plaintiff alleges Defendants willfully and deliberately used and are using an infringing mark on its websites and social media, and in advertising, "in such a way as is likely to cause confusion, to cause mistake, and/or to deceive the consuming public."  Dkt. # 34 at 7–8.  Defendants respond that there is no likelihood of confusion; if the marks are infringing, that infringement was not willful or deliberate; and they were unaware of Plaintiff's marks or The Boiling Crab restaurant chain.  Dkt. ## 36 at 4 (Resp.); 37 at 3 (Defs.'s Mot. Summ. J.).  And they move for summary judgment dismissal of this matter.  Dkt. # 37.

### III.

#### ANALYSIS

A.     Summary Judgment Standard

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). In determining whether an issue of fact exists, the Court views the evidence and reasonable inferences therefrom in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make an adequate showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp.*, 477 U.S. at 323. A fact is "material" if it might affect the outcome. *Anderson*, 477 U.S. at 248. A factual dispute is "genuine" if the evidence is such that reasonable persons could disagree about whether the facts claimed by the moving party are true. *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983).

B.   Plaintiff's Lanham Act Claims

Plaintiff claims Defendants' "use of the BOILING CRAWFISH and BOILING CRAWFISH SEAFOOD RESTAURANT trademarks" infringes on "The Boiling Crab's THE BOILING CRAB trademarks" under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1). Dkt. # 34 at 1. To establish a claim for trademark infringement under 15 U.S.C. § 1114(1), Plaintiff must prove: (1) it has a valid protectable mark[1] and (2) Defendants' use of the mark confuses or is likely to confuse a "reasonably prudent consumer." *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). Courts apply

> eight factors set forth in [*AMF Inc. v. Sleekcraft Boats*] to determine whether a likelihood of confusion exists: (1) the "similarity of the marks"; (2) the "strength of the mark" that has allegedly been infringed; (3) "evidence of actual confusion"; (4) the relatedness or "proximity" of the goods; (5) the "normal marketing channels" used by both parties; (6) the "type of goods and the degree of care likely to be exercised by the purchaser"; (7) the alleged infringer's "intent in selecting the

---

[1] Defendants do not dispute that Plaintiff owns four valid trademarks. Dkt. ## 36 at ¶ 18 (Answer to Am. Compl.); 37 at 7 (Defs.'s Mot. Summ. J.).

ORDER RE: MOTION
FOR SUMMARY JUDGMENT - 5

mark"; and (8) evidence that "either party may expand his business to compete with the other." *BBC Grp. NV LLC v. Island Life Rest. Grp. LLC*, 413 F. Supp. 3d 1032, 1043 (W.D. Wash. 2019) (quoting *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–54 (9th Cir. 1979)). "The test is a fluid one and the plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005); *E & J Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992) ("This list of factors, while perhaps exhausting, is neither exhaustive nor exclusive.").

"Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 184 F.3d 1107, 1109 (9th Cir. 1999) (citing *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1356 n. 5 (9th Cir. 1985) ("[T]he question of likelihood of confusion is routinely submitted for jury determination as a question of fact.")); *see also JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1105 (9th Cir. 2016) ("Because the [likelihood of confusion] determination is based on a non-exhaustive, multi-factor, fact-intensive inquiry, we have cautioned against granting summary judgment in these cases."). The "'[l]ikelihood of confusion is a factual determination,' and 'district courts should grant summary judgment motions regarding the likelihood of confusion sparingly.'" *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1039 (9th Cir. 2010) (quoting *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901–02 (9th Cir. 2002)). To avoid summary judgment, Plaintiff "must show sufficient evidence to permit a rational trier of fact to find that confusion is 'probable,' not merely 'possible.'" *M2 Software, Inc. Madacy Ent.*, 421 F.3d 1073, 1085 (9th Cir. 2005) (citing *Murray v. CNBC*, 86 F.3d 858, 861 (9th Cir. 1996)).

Application of the *Sleekcraft* factors here raises a genuine issue of material fact as to the likelihood of confusion.

1. Strength of the mark

The strength of a trademark "is evaluated in terms of its conceptual strength *and* commercial strength." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000) (emphasis added), *overruled on other grounds by Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The more distinctive a mark, the more conceptual strength it has. *Id.* And "[t]he stronger the mark, the more protection it is afforded." *BBC Grp. NV LLC*, 413 F. Supp. 3d at 1043 (citing *Sleekcraft*, 599 F.2d at 349); *see also GoTo.com, Inc.*, 202 F.3d at 1207 ("The more likely a mark is to be remembered and associated in the public mind with the mark's owner, the greater protection the mark is accorded by trademark laws.").

The conceptual strengths of trademarks "are categorized as generic, descriptive, suggestive, and arbitrary or fanciful. A generic mark is the least distinctive, and an arbitrary or fanciful mark is the most distinctive." *M2 Software, Inc.*, 421 F.3d at 1080 (citations omitted). Generic marks refer to the product and cannot be registered as trademarks. *Fortune Dynamic, Inc.*, 618 F.3d at 1033. Descriptive marks describe the qualities or characteristics of a good or service. *Id.* Suggestive marks "require a consumer to 'use imagination or any type of multistage reasoning to understand the mark's significance.'" *Id.* (quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985)). "On summary judgment. . ., the question is whether a reasonable jury could find that . . . mark is at least suggestive." *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1162 (9th Cir. 2021). When "the [PTO] issue[s] a registration without requiring proof of secondary meaning, the federal registration provides *prima facie* evidence that the. . . mark is inherently distinctive (i.e., at least suggestive)." *Id.*; *see also Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113–14 n.7 (9th Cir. 2010) ("A

corollary of this principle is that the registrant is not entitled to a presumption of secondary meaning unless the PTO required proof of secondary meaning as part of the application for registration of the mark."). But Defendants "may rebut this presumption." *Id.*

Defendants say Plaintiff's marks are descriptive or generic. Dkt. # 37 at 12. Plaintiff responds that its marks are not descriptive or generic because it does not boil crab, it steams crab. Dkt. # 41 at 16. Plaintiff also says that its marks are at least suggestive because "boiling" conveys "very angry or upset," so consumers must use their imagination to reach the conclusion of The Boiling Crab's services from a "very hot, agitated, or upset crab." Dkt. # 41 at 17. But Plaintiff also says that its "mark is a literal anatomical depiction of a cooked crab" (Dkt. # 41 at 16) and the red text in Plaintiff's mark is "to suggest the heat from a boiling pot" (Dkt. # 43 at 6). While Plaintiff's marks could be descriptive, the PTO registered Plaintiff's marks without proof of a secondary meaning, which is prima facie evidence that they are "inherently distinctive." *Ironhawk Techs., Inc.*, 2 F.4th at 1162. The PTO registration creates a presumption of distinctiveness and thus raises an issue of fact.

"A mark's overall strength is relative and cannot be determined by mechanistically assessing its conceptual or commercial strengths. . . [A] suggestive or descriptive mark, which is conceptually weak, can have its overall strength as a mark bolstered by its commercial success." *M2 Software, Inc.*, 421 F.3d at 1081. The Court may consider advertising and the marks standing in the marketplace in assessing commercial strength. *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999). Since 2018, Plaintiff has spent more than $808,000 towards marketing and advertising. Dkt. # 44 at 3–4. The Boiling Crab restaurants are featured on food blogs, social media, newspapers, and magazines in California, Florida, Hawaii, Maryland, Massachusetts, Nevada, and Texas. Dkt. ## 45 (exhibits 11–24); 43 (exhibits 33–38). Plaintiff has received "unsolicited media attention" from celebrities posting on

ORDER RE: MOTION
FOR SUMMARY JUDGMENT - 8

social media.  Dkt. # 45 (exhibits 11–24).  No matter if Plaintiff's mark is descriptive or suggestive, the evidence of commercial strength raises a question about the marks' "ultimate force," which in turn serves to raise a question of material fact as to likelihood of confusion.  *See Fortune Dynamic, Inc.*, 618 F.3d at 1035 ("Whatever its ultimate force, this evidence is sufficient to make the relative commercial strength of the. . . mark a question for the jury.").

      2.  Proximity or relatedness of the services

Proximity or relatedness of goods and services are "measured by whether the products are (1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and function."  *BBC Grp. NV LLC*, 413 at 1047 (citing *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1150 (9th Cir. 2011)).  Goods and services are related when customers are likely to associate them or consider them from the same source.  *Surfvivor Media, Inc.*, 406 F.3d at 633.  "Where the goods are related or complementary, the danger of confusion is heightened."  *M2 Software, Inc.*, 421 F.3d at 1082.

Plaintiff's and Defendants' restaurants both provide Cajun-style seafood by the pound with varying levels of spices and seasonings.  Here are images of Plaintiff's current menus:

  

Dkt. # 43-2 at 2–4.  Like Plaintiff's menu heading that says, "STEP 1: WHAT'S YOUR CATCH?" Defendants' menu said, "WRAP YOUR CATCH"; Plaintiff's said, "STEP 2:

ORDER RE: MOTION
FOR SUMMARY JUDGMENT - 9

WHAT'S YOUR FLAVOR?" and Defendants' said, "PICK YOUR FLAVOUR"; and Plaintiff's said, "STEP 3: HOW HOT CAN YOU GO?" and Defendants' said, "HOW SPICY CAN YOU." Dkt. # 49-2 at 3.  After the 2016 demand letter, Defendants changed their menu to the following:




Dkt. # 42-12 at 9–15.  The evidence of the similarity of the menus and services before this change supports the relatedness factor, which tends to raise an issue of material fact as to the likelihood of confusion.

   3.   Similarity of the marks

"[T]he similarity of the marks . . . has always been considered a critical question in the likelihood-of-confusion analysis."  *GoTo.com, Inc.*, 202 F.3d at 1205.  The Court considers the whole mark rather than the sum of its parts, how "they appear in the marketplace," and similarity in terms of appearance or sight, sound, and meaning.  *M2 Software, Inc.*, 421 F.3d at 1082; *GoTo.com, Inc.*, 202 F.3d at 1206.  The more similar the marks, the greater the likelihood of confusion.  *GoTo.com, Inc.*, 202 F.3d at 1206.  Courts weigh "similarities . . . more heavily than differences."  *Id.*

Plaintiff's and Defendants' marks contain the word "Boiling" and a red crustacean. Plaintiff's crustacean is a crab, and Defendants' is a crawfish often with a chef's hat and smiling face.  Plaintiff and Defendants use circular and horizontal marks.  The circular marks include

text around the crustacean.  Plaintiff and Defendants also use a mark with horizontal text. Plaintiff's horizontal mark is text only, without a crab.  Defendants' horizontal mark includes the hatted and smiling crawfish superimposed on the "O" in the word "BOILING."

While the fonts and types of crustacean are distinct, both Plaintiff and Defendants use a mark with black text around red crustaceans on customer bibs:

 

Dkt. ## 45-7 at 7; 45-27 at 5.  Sometimes, Defendants use bibs with neither text nor their image of a crawfish with a hat and face:

 

Dkt. ## 45-27 at 11; 45-29 at 6.

Both Plaintiff's and Defendants' employee uniforms include black t-shirts with white text and a red crustacean.  Plaintiff's current and "primary" employee uniforms include its trademark with lowercase white text and a red crab:

 

ORDER RE: MOTION
FOR SUMMARY JUDGMENT - 11

Dkt. ## 43-24; 45-1 at 2.  Below are Defendants' 2019 and 2020 uniforms, which included white text and a red crawfish:

   

Dkt. # 42-12 at 17–18.

Plaintiff compares the use of the marks on the parties' cups:

  

Dkt. ## 45-1 at 4–5; 45-26 at 2.  Both parties' cups use circular marks—Plaintiff's cups have blue text around a red crab and Defendants have black text around the hatted and smiling red crawfish.

The visual similarities between the marks and how the parties use them serve to raise an issue of fact as to the likelihood of confusion.

4. Evidence of actual confusion

"Incidents of actual confusion are strong evidence of likelihood of confusion." *BBC Grp. NV LLC*, 413 at 1047 (citing *Rodeo Collection v. West Seventh*, 812 F.2d 1215, 1219 (9th Cir. 1987)).

Plaintiff provides evidence that, on July 22, 2020, an employee of Northwest Mortgage in Puyallup contacted Plaintiff to verify the employment of one of Defendants' employees.  Dkt. ## 43 at 16 (Ngo Decl.); 43-46 (email).  Plaintiff provides evidence of social media users

geotagging[2] "Boiling Crawfish," but hashtagging[3] "#boilingcrab." Dkt. ## 42-32; 42-33.

Plaintiff also provides two incidents of actual confusion on restaurant review websites:

- On July 27, 2016, Lillie M. wrote a Yelp review for Boiling Crawfish. Dkt. # 42-28. In the post, she apparently accidentally wrote "Boiling Crab" when she meant "Boiling Crawfish." A later produced version of the post does not include "Boiling Crab." *Compare* Dkt. # 42-28 *with* Dkt. # 42-29.

- On December 17, 2017, Barakat Mawalin left a one-star Google review for Boiling Crawfish that said, "DO NOT GO HERE !!!!!!! SPOILED AND ROTTEN SEAFOOD!!!!! NO REFUND NO MANAGER ON-SITE BOILING CRAB SOLD MY FAMILY BAD SHRIMP." Dkt. ## 42-14 at 2; 42-30; 42-31.

Defendants say the number of times Boiling Crawfish customers expressed their awareness that they were not eating at The Boiling Crab outnumbers Plaintiff's evidence of actual incidents of confusion. Dkt. # 37 at 4–5, 15. While some customers seemingly distinguish the two restaurants, the evidence of actual confusion tends to raise an issue of material fact as to the likelihood of confusion.

5. Marketing channels

"Convergent marketing channels increase the likelihood of confusion." *Sleekcraft*, 599 F.2d at 353. The internet, "as a marketing channel, is particularly susceptible to a likelihood of confusion since . . . it allows for competing marks to be encountered at the same time, on the same screen." *GoTo.com, Inc.*, 102 F.3d at 1207. But "[s]ome use of the Internet for marketing. . . does not alone and as a matter of law constitute overlapping marketing channels." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1151 (9th Cir. 2002). In *GoTo.com*, the

---

[2] "[T]o add location information to (something, such as a digital image)." *Geotag*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/geotagging.

[3] "[A] word or phrase preceded by the symbol # that classifies or categorizes the accompanying text (such as a tweet)." *Hashtag*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/hashtag.

ORDER RE: MOTION
FOR SUMMARY JUDGMENT - 13

parties use of similar marks for similar services and substantial marketing on the internet was enough to suggest a likelihood of confusion.  102 F.3d at 1207.

Defendants say they exclusively market their restaurants on Facebook, and that because "essentially *all* restaurant chains market through the internet," this factor is neutral.  Dkt. # 37 at 16.  But like Plaintiff, Defendants have a presence on other social media platforms and websites. *See e.g.*, Dkt. ## 42-29 (Yelp); 42-30 (Google); 42-31 (Google); 42-32 (Instagram); 42-33 (Instagram); 45-26 (Facebook).  And the same YouTube channel featured both Plaintiff's and Defendants' restaurants.  Dkt. ## 42-12 at 5; 45-29.  Because the parties have overlapping presences on social media and websites, the evidence on this factor also tends to raise an issue of fact as to the likelihood of confusion.

6.   Degree of consumer care

"In analyzing the degree of care that a consumer might exercise in purchasing the parties' goods, the question is whether a 'reasonably prudent consumer' would take the time to distinguish between the two product lines."  *Surfvivor Media, Inc.*, 406 F.3d at 634 (quoting *Brookfield Commc'ns, Inc.*, 174 F.3d at 1060).  "Unlike purchasers of expensive goods—whom we expect to be more discerning and less easily confused—purchasers of inexpensive goods 'are likely to exercise less care, thus making confusion more likely.'"  *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1127 (9th Cir. 2014) (determining the district court properly found that consumers exercise a low degree of care when purchasing inexpensive pomegranate beverages) (quoting *Brookfield Commc'ns, Inc.*, 174 F.3d at 1060).

Defendants cite Dr. William Bearden's report and testimony, in which Dr. Bearden asserts generally that consumers of restaurants are "conscious and thoughtful" about their decision of where to eat.  Dkt. ## 37 at 16 (Defs.'s Mot. Summ. J.); 49 at 12 (Bearden Report). He says that consumers exhibited care on Twitter by recognizing that The Boiling Crab and

Boiling Crawfish are different restaurants. Dkt. # 49 at 12. Plaintiff moves to strike the opinions in Dr. Bearden's report. Dkt. # 41 at 13. To rebut Dr. Bearden's report, Plaintiff provides the declaration of Dr. Jonathan Hibbard. Dkt. # 41 at 20. Dr. Hibbard asserts that the average price per person at Plaintiff's restaurant is $35, excluding the cost of alcohol. Dkt. # 46-1 at 34. He says that Plaintiff and Defendants are "casual dining restaurant brands," and "[m]ost marketers would consider the purchase of a casual dining experience to be a low involvement decision." *Id.* at 33. He also says, "A lower involvement purchase usually involves an abridged decision-making process," and "can increase the likelihood of confusion." *Id.* at 33–35. Plaintiff also says that evidence of actual confusion is probative of the degree of consumer care. Dkt. # 41 at 27. The evidence above of consumer care tends to raise an issue of fact here.

       7.    Defendants' intent in selecting the mark

"This factor favors the plaintiff where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark." *Brookfield Commc'ns, Inc.*, 174 F.3d at 1059. "'[W]hen the evidence does show or require the inference that another's name was adopted deliberately with a view to obtain some advantage from the good will, good name, and good trade which another has built up, then the inference of the likelihood of confusion is readily drawn.'" *Clean Crawl, Inc. v. Crawl Space Cleaning Pros, Inc.*, 364 F. Supp. 3d 1194, 1209 (W.D. Wash. 2019) (quoting *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 157–58 (9th Cir. 1963)).

Plaintiff points to evidence that Defendants visited an area in California near two of The Boiling Crab restaurants before opening their restaurants in Washington. Dkt. # 41 at 11. Plaintiff provides a copy of Hien Van Nguyen's Facebook page, which includes four posts from April 10 and 14, 2016, checking-in at various locations in Southern California. Dkt. # 42-56. Plaintiff provides driving directions from one of the check-in locations to two The Boiling Crab

ORDER RE: MOTION
FOR SUMMARY JUDGMENT - 15

locations, which are respectively about 2.1 miles or 2.6 miles from the check-in spot. Dkt. # 42-60 at 3–4. Plaintiff also provides a post from January 18, 2018, showing Hien Van Nguyen checked-in at a Pho restaurant in Westminster, California. Dkt. # 42-54 at 4. Defendants opened the Boiling Crawfish restaurant in Kent in June 2016, and in Puyallup in 2018. Dkt. ## 42-12 at 3 (Defs.'s Resp.); 42-55 (Facebook); 42-51 at 10 (Tuyen Bach Nguyen Dep.). Tuyen Bach Nguyen testified that she and Hien Van Nguyen decided to open a crawfish restaurant after they noticed that there were only three crawfish restaurants in Washington. Dkt. # 42-51 at 14. And she said she had never heard of The Boiling Crab restaurants. *Id.* at 47.

Plaintiff alleges Defendants renovated their Kent restaurant and used some of Plaintiff's design elements in the renovation after receiving Plaintiff's letter demanding Defendants cease or modify the use of the marks. Dkt. # 41 at 4, 11–12. Plaintiff sent Defendants a demand letter on September 26, 2016. Dkt. ## 42-51 at 40 (Tuyen Bach Nguyen Dep.); 49-2 at 2–4 (Bearden Report). Plaintiff alleges the remodel occurred in 2019. Dkt. # 41 at 11. Plaintiff and Defendants' restaurants are "nautically-themed" and decorated with "orange-red paint, brick facade and black ceiling tiles." Dkt. ## 43 at 14 (Ngo Decl.); 37 at 3 (Defs.'s Mot. Summ. J.). Here are images from Plaintiff's restaurants sometime after 2006 and in 2022:




ORDER RE: MOTION
FOR SUMMARY JUDGMENT - 16

Dkt. ## 43-44; 45-9 at 9.  Here are images from Defendants' Kent restaurant in 2016:

 

Dkt. # 42-51 at 76–80.  And here are images from Defendants' Kent restaurant in 2019 and 2020:

 

*Id.* at 118, 116.

Tuyen Bach Nguyen admitted she received the demand letter in 2016 and texted a phone number in the letter.  *Id.* at 41–42.  She said she changed the price of a few menu items based on a text message she received but denied changing anything else.  *Id.* at 46–48 (Tuyen Bach Nguyen Dep.); *See* Dkt. # 42-12 at 3–4, 9–15 (Resp. to Req. Produc.).

Plaintiff also notes that Defendants filed their trademark registration application on August 28, 2017, nearly one year after receiving Plaintiff's demand letter.  Dkt. # 41 at 28 n.12.  Although the application stamp says Defendants filed it in August 2017, Defendants wrote they first used the mark on June 10, 2016.  Dkt. # 38 at 81–82.

The evidence above tends to raise a question about Defendants' intent, which serves to raise an issue of fact as to the likelihood of confusion.

ORDER RE: MOTION
FOR SUMMARY JUDGMENT - 17

8. Likelihood of expansion

"Even where two marks are nearly identical, courts may find no customer confusion if the two companies operate in entirely different geographic areas." *BBC Grp. NV LLC*, 413 at 1044. "To resolve this factor, we must determine whether existence of the allegedly infringing mark is hindering the plaintiff's expansion plans." *Surfvivor Media, Inc.*, 406 F.3d at 634.

Plaintiff says it is "actively exploring further expansion of its chain of THE BOILING CRAB restaurants to additional locations throughout the United States." Dkt. ## 34 at 3(Am. Compl.); 41 at 30 (Pl.'s Opp'n to Mot. Summ. J.). Plaintiff says that expanding to Washington is a natural choice because its marks have already extended to the state. Dkt. # 41 at 30. Plaintiff has received inquiries from people interested in opening a The Boiling Crab franchise in Washington and inquiries from customers asking when they will open The Boiling Crab in Seattle or Washington. Dkt. ## 42-9 at 13–14; 45-10. The evidence of Plaintiff's interest in expanding to Washington tends to raise an issue of material fact as to the likelihood of confusion.

Having considered the record and the *Sleekcraft* factors, viewing the evidence and reasonable inferences therefrom in the light most favorable to Plaintiff, the Court concludes that there is a genuine issue of material fact as to the likelihood of confusion.

### IV.

#### CONCLUSION

For the above reasons, the Court DENIES Defendants' Motion for Summary Judgment. Dkt. # 37. The Court DENIES WITHOUT PREJUDICE Plaintiff's requests to strike paragraphs 17 and 18 of the Michael Kyllo Declaration (Dkt. # 38 at 2–3) and strike the opinions in the William Bearden Report (Dkt. # 38 at 5). Dkt. # 41 at 13.

Dated this 31st day of May, 2022.

*John H. Chun*

John H. Chun
United States District Judge